**UNITED AIRCRAFT PRODUCTS, Inc., Plaintiff-Appellee v. CRUZAN, Defendant-Appellant.**

Ohio Appeals, Second District, Montgomery County.

No. 1824. Decided March 26, 1945.

NICHOLS, J., of the Seventh Appellate District sitting by designation in place of Barnes, P. J.

Joseph D. Chamberlain, Dayton, E. H. & W. B. Turner, Dayton, for plaintiff-appellee.

Gus W. Byttner, Dayton, Henry G. Dybvig, Dayton, for defendant-appellant.

## OPINION

By HORNBECK, J.

This appeal, although originally noted as upon law and fact, proceeds as upon questions of law because of the failure of defendant to file an appeal bond. The appeal in this court has at all times been considered as upon questions of law and we have a bill of exceptions and briefs wherein are set forth and discussed assignments of error. The appeal is directed to a decree of the trial court permanently enjoining defendant and requiring specific performance of a contract, all as prayed in plaintiff's petition. The decree operates upon the ownership of four inventions or improvements of which defendant is the inventor or co-inventor. It is agreed that the effect of the decree is to order the defendant to assign to the plaintiff all his right, title and interest in and to the applications for United States letters patent to an automatic oil conditioner, an oil control valve, an elliptical type oil cooler and a direct action shutter control with surge pressure protector. Further, defendant was permanently enjoined from disclosing any secret or confidential information concerning plaintiff's products, etc., disclosed to or gained by him during the period of his employment by plaintiff.

Seven errors are assigned which may be encompassed in two, that the decree is manifestly against the weight of the evidence and contrary to law.

The petition was predicated primarily, upon an alleged breach of a written contract known as a "put on contract" between the parties and secondarily, upon an implied con-

tract growing out of the confidential relationship of employer and employee. The right to the injunction was grounded upon the fact that defendant who had left the employ of plaintiff to accept a managerial position with another company in like enterprise to that of plaintiff might divulge information secured by him by reason of his access to the experimental equipment, secret information and ideas growing out of the character of the work carried on by the plaintiff, namely, the manufacture of aircraft accessories and engineering to develop and test such parts.

The issue drawn by the answer of the defendant was raised by a general denial and by the averment that there had been no meeting of the minds of the parties to the terms of the contract. The defenses which have been argued are varied. One based upon the claim that there was an executed verbal contract by the terms of which an arrangement as to division of profits from the inventions was set up between the parties and that, therefore, the subsequent written contract would not operate upon the ownership of the four devices under consideration. In conjunction with this claim it is urged that these devices were conceived by defendant jointly or as co-inventor upon his or their own time, with their own material, in his own home and entirely independent of his employer, the plaintiff; further, that the written contract does not include the devices under consideration because of the fact that the patentable ideas were conceived prior to its execution. It is further urged that a permanent injunction should not be granted because of failure of proof of any purpose on the part of the defendant to do those things which he is enjoined from doing and finally, that because of the refusal of the plaintiff to carry out the terms of the oral contract, as testified by the defendant, the equitable arm of the court should not be made available to the plaintiff.

The trial judge not only entered a general decree in favor of the plaintiff but also made special findings of fact and handed down a written opinion.

We may not disturb the findings of fact because there is support in the record for all of them. Nor is there anything in this record that would require the court to apply any other than the customary rule to the evidence because there is presented upon the main factual dispute contrariety of testimony. In this situation the trial court had full right to accept the evidence of the plaintiff as against that offered by the defendant.

The central and determinative factor in this case is the

written contract. That it was a subsisting, valid and binding agreement upon the parties is manifestly true and the trial judge so found. It is not claimed that there was any duress or fraud in inducing its execution. There is no prayer for its reformation. It is developed by the evidence that the contract was prepared and required to be signed by the employees of the plaintiff company, in part, to bring about the very result that is sought to be accomplished in this action.

The defendant entered the employ of the plaintiff in 1939. His former employment was with The National Cash Register and his work entirely unconnected with aircraft parts development. There is some dispute as to the exact nature of his employment with plaintiff but, whatever it was, it is obvious that it was confidential and that he had the opportunity to, and did, in his employment absorb the information which grew out of his contacts with the products of plaintiff company, its developments and experimental work that it was carrying on in aircraft procedure. This likewise was true to a greater or lesser extent with all of the employees. If out of this relationship the defendant conceived ideas which were patentable, whether or not he did the work incident to bringing them to a patentable stage in the plant of the plaintiff or elsewhere, the law of implied contract would determine the respective rights of the parties to any invention so patented. But the plaintiff had the further right, of which it availed itself, to put in specific language the obligation of its confidential employees as to patentable ideas which were conceived during the time when they were in its employ. Having reduced their agreement to writing it alone fixed the respective rights of the parties.

The contract under consideration was prepared in the summer of 1941 and distributed among the employees who were requested to sign it. Two of the devices under consideration had been, under the testimony, completed on May 15, 1941, prior to the date of the contract, and defendant upon its receipt, in connection with another experiment which he was required to carry on and which he thought might involve the ideas carried into his inventions, became concerned as to his rights under these inventions. This resulted in a conference with the management of plaintiff granted upon defendant's request. As to what occurred at this meeting there is a divergence of testimony. It is its claim, and the plaintiff's witnesses testify, that the defendant was told unequivocally that he would be required to sign over to the company all patents or patentable devices the ideas of which

he had conceived at any time during his employment with the company and that if he did not do so he could no longer maintain his employment with the company and that as to the devices under discussion, he would be required to assign his rights to the plaintiff. Defendant states that he was told that he would receive a proper amount of the benefits of the idea to the company.

The net effect of the acts of the parties after the defendant received the written contract from his employer is that he was put on notice that if he signed it he would be yielding up all his rights to the devices under consideration. After the conference with the management of the plaintiff, he did sign the contract. By its terms, he was bound to transfer to the company all of his rights in and to the devices under consideration.

The pertinent and determinative language of the contract is found in paragraph No. 6

(a) The party of the first part further agrees that any and all inventions, discoveries or improvements in any way relating to Aircraft Parts and Accessories, or other items of manufacture, manfactured and or sold by said Company during the term of said employment

(d) which inventions or discoveries or improvements

(e) are **now known** to the party of the first part, or **discovered** or **made** by the party of the first part, either in whole or in part, **during the term of said employment** (Emphasis ours)

(f) shall immediately become the absolute property of the Company * * *.

By the expression "now known to the party of the first part" and the language "during the term of said employment" it becomes evident, even to a layman, that it was meant that if the contract was observed the devices under consideration became the absolute property of the company. This latter quoted language, under all the circumstances and upon consideration of the whole of the written instrument, certainly means the period of employment. These inventions then were conceived during the period of defendant's employment with the plaintiff and clearly the contract must be given effect to determine their ownership.

The trial judge finding that the "put on contract" was subsisting, valid and controlling of the rights of the parties as to the inventions under consideration it becomes unnecessary to consider the application of the parol evidence rule as it affects the oral agreement asserted by the defendant, or the

doctrine, that as the written contract covers the entire agreement between the parties the parol agreement is merged in the written contract. Inasmuch as the written contract clearly controls the rights of the parties, it is not necessary nor advisable to discuss what their obligations may have been had they been relegated to their respective rights under their employment agreement.

The claim of the defendant that there was an executed oral contract may not be supported because obviously, if all that is claimed by the defendant is true, it was nothing more than an executory contract.

We have not cited nor specifically discussed the many cases set out in the helpful and complete briefs of counsel because the controlling legal principles are so well known, and in deciding this appeal we have not resorted to the more technical phases of the law as discussed in the briefs.

There is ample support for the decree of the trial judge and no error assigned is well made. We are in accord with the written opinion of Judge Cecil and could well base our judgment upon it.

Judgment affirmed.

GEIGER, J., and NICHOLS, J., concur.